**IN THE UNITED STATE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MORRIS MITCHELL,  et al.,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 3:07-CV-418-MEF** |
| | ) | |
| **AMERICAN SUZUKI MOTOR** | ) | |
| **CORPORATION, et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

**PLAINTIFFS' MOTION TO REMAND AND**
**RESPONSE TO ADAMS MOTORSPORTS, INC.'S**
**MOTION TO DISMISS**

**COME NOW** the Plaintiffs and file this their Motion to Remand and their Response to the Motion to Dismiss urged upon this Court by Defendant Adams Motorsports, Inc. (hereinafter "Adams").  Plaintiffs would show unto the Court that this cause was initially and properly filed in Alabama state court because there were causes of action alleged against a non-diverse in-state defendant, Adams Motorsports, Inc. (hereinafter "Adams").  Adams is a Suzuki motorcycle dealership whose principal place of business is located in Montgomery County Alabama.  All of the remaining defendants are entities foreign to the state of Alabama and therefore are diverse parties for purposes of federal jurisdiction.  Defendants filed their petition to remove the case to this Court on May 14, 2007.  As Plaintiffs will demonstrate herein, the removal petition is lacking in merit and the cause is due to be remanded to the Circuit Court of Macon County, Alabama.  Defendants assert in their removal petition that Adams is fraudulently joined as a defendant in this matter.  As stated, this allegation is completely lacking in merit based upon the law of the State of Alabama and thus, this cause must be remanded to state circuit court.  In its motion, Adams alleges that it should be dismissed from this action for fraudulent joinder.  Despite the allegations made in the affidavits submitted to this Court and throughout Adams' brief and motion papers, Adams has had substantial contacts with the Plaintiff in

this case, Morris Mitchell.  In fact, Adams had the clear opportunity to inspect the four wheeler at issue. It is undisputed by Adams that Mitchell brought the subject four wheeler to its Montgomery Alabama office for repairs or inspection.  As will be demonstrated hereinbelow, Adams had such involvement with Mitchell that it would not be unreasonable for Adams to be held to jurisdiction in state court as there is a plausible cause of action alleged against this Defendant.

### Plaintiffs' Summary Factual Background

This action grows out of a single vehicle accident which occurred in Macon County, Alabama on January 11, 2006.  At the time of the incident, the Plaintiff was operating his four wheeler on a dirt road in Macon County, Alabama when the four-wheeler's right front tire partially disconnected from the tie rod causing the four-wheeler to go out of control and roll over.  As a result of this failure, Mr. Mitchell was thrown into several trees and sustained severe injuries that have required several surgeries to treat.

The crux of the Defendants' motion for removal of this case to federal court centers around the Defendant known as Adams.  Adams' business is located in Montgomery County, Alabama.  Plaintiffs allege in their complaint that the four wheeler was taken to Adams before the date of the accident giving rise to this lawsuit.  Plaintiff's proof in this regard is based on the testimony of Morris Mitchell (see Mitchell affidavit attached hereto as "Exhibit A").  Mitchell was the owner of the four wheeler at the time it was taken to Adams for inspection and/or repair.  Mitchell testifies in his affidavit that he took the four wheeler to Adams specifically because the right front wheel appeared to be misaligned.  Other Suzuki four wheelers had suffered wheel separations as was demonstrated by a November 17, 2005 recall notice. (See November 17, 2005 Recall attached hereto as "Exhibit B".)  While the recall did not involve the specific four wheeler at issue, it clearly indicated a wheel assembly problem to Suzuki dealers.  Adams did not, to all appearances, inspect the right front wheel of the subject four wheeler nor

did it take any other corrective actions in that regard. Adams also did not inform Plaintiff of any potential problem related to front wheel separations. (See Mitchell Affidavit.) A second recall specific to the model four wheeler at issue did occur on March 7, 2005. (See March 7, 2005 Recall attached hereto as "Exhibit C".) This recall was related to a plastic defect in the fuel tank. Adams did not mention this recall to the Plaintiff at all and apparently did not inspect the fuel tank at the time it had possession of the four wheeler. (See Adams work receipt of September 22, 2005 attached hereto as "Exhibit D".)

Defendants contend that they are entitled to remove this case to federal court under the guise of a "fraudulent" joinder of Adams as a party Defendant in this litigation. Plaintiffs would point out, however, that there is a viable, colorable claim against this in-state Defendant and that, as a result, there is incomplete diversity of citizenship among the various parties to this case. That being the case, this matter must be remanded to state court for further proceedings.

## Summary of State Law Applicable to This Case

Alabama law is replete with decisions of the state appellate courts holding that one who undertakes to act must do so with due care, even if one undertakes such an action gratuitously. See, e.g., *Beasley v. MacDlonald Engineering Co.*, 287 Ala. 189, 249 So.2d 844 (1971). One who "undertakes an employment, which requires care and skill, whether for reward or not, a failure to exercise the measure of care and skill appropriate to the measure of such employment is negligence for which an action will lie." Id. It goes without saying that the business of vehicle maintenance and repair carries with it a duty to act with due care for the safety of one's customers. Clearly Adams owed a duty to Mitchell to perform a reasonable inspection of the four wheeler once it was taken to Adams for inspection and/or repair. Once Adams undertook to inspect the Plaintiffs' four wheeler, it had a duty to do so in keeping with the skill and knowledge applicable to the profession. See, also, *In Re Silicon Gel*

*Breast Implants Prods. Liab. Litig.*, 887 F. Supp. 1455 (N.D. Ala. 1995); *In Re Silicon Gel Breast Implants Prods. Liab. Litig.*, 887 F.Supp. 1447 (N.D. Ala. 1995). Obviously, there was a problem with the right front wheel assembly at the time it was taken to Adams. (See Mitchell Affidavit.)

## Legal Standard As To Removal Based On Diversity Of Citizenship

Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See 28 U.S.C. §§ 1441(a)*. A federal district court may assert jurisdiction in a case involving citizens of different states where the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. *See 28 U.S.C. §§ 1332(a)*. "Diversity jurisdiction under 28 U.S.C. §§ 1332 requires complete diversity--every plaintiff must be diverse from every defendant." *Tapscott v. MS Dealer Serv. Co.,* 77 F.3d 1353, 1359 (11th Cir.1996). Therefore, where the parties are diverse and the amount in controversy is sufficient, a defendant has the statutory right to remove an action from state to federal court. *See 28 U.S.C. §§ 1332(a)*. Any defendant seeking removal has the burden of establishing the existence of federal jurisdiction. *Greer v. Crown Title Corporation,* 2002 WL 1988277 (D.Md.)). The removal statutes are to be <u>strictly construed</u>, and <u>all doubts are to be resolved against removal</u>. *Green v. H & R Block*, 981 F.Supp. 951, 953 (D.Md. 1997)(emphasis supplied). In addition, section 1441 is construed strictly against removal jurisdiction. *Fardella v. Downey Savings & Loan Association*, 2001 WL 492442 (N.D.Cal)) quoting *Prize Frize, Inc. v. Matrix* (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir.1999). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). The removal jurisdiction of the Federal Courts is to be 'scrupulously confined,' and if federal removal jurisdiction is doubtful, a remand is necessary. The strict policy against removal and in favor of remand protects the sovereignty of state governments and state judicial power. *Egle Nursing Home v. Erie Insurance Group,* 981 F. Supp. 932, 933 (D. Md.1997). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the

case shall be remanded." 28 U.S.C. §§ 1447(c).

As the Supreme Court has long recognized, a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Johnston Indus., Inc. v. Milliken & Co.,* 45 F. Supp. 2d 1308, 1311 quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed. 144 (1921). "The Eleventh Circuit has articulated that joinder may be deemed fraudulent in three situations: The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.... The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.... [A] third situation of fraudulent joinder was identified--i.e., where a diverse defendant is joined with a non diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non diverse defendant."*Johnston Indus, Inc. v. Milliken & Co.,* 45 F. Supp. 2d 1308, 1311 quoting *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998) "The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989) (citing *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983)). The burden on the defendant is a "heavy one." *Crowe v. Coleman,* 113 F.3d 1536, 1538. "The district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman,* 113 F.3d 1536, 1538. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.,* 709 F.2d 1422, 1440-41 (citing *Parks v. New York Times, Co.,* 308 F.2d 474, 477-78 (5th Cir.1962)).

As this Court is aware, the removal of a case is to be allowed only where it is clearly demonstrated that federal court has jurisdiction. In fact, this Court in considering a removal should be

prejudiced against the removal and should resolve all doubts about the Plaintiff's claims in favor of remand. *Shamrock Oil & Gas v. Sheets*, 331 US 100 (1941); *Butler v. Polk*, 592 F.2d 1293 (5th Cir. 1979). In cases where removal is predicated on an alleged fraudulent joinder, the removing party has the burden of proving that either: (1) there is <u>no possibility</u> that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 156l (11th Cir. 1989) (emphasis supplied). The burden of the removing party has been described in numerous cases as being "heavy." See, e.g., *B. Inc. V. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). In determining whether to remand a case to state court, the reviewing court must view the plaintiffs factual allegations in the light most favorable to the plaintiff and must resolve any and all doubts or uncertainties regarding state substantive law in favor of the plaintiff.

When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claims beyond determining whether it is an "arguable" claim under state law. <u>Id</u>. at 548-49. The Court's jurisdictional inquiry "must not subsume substantive determination." <u>Id</u>. at 550. See, also, *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983). The Eleventh Circuit Court of Appeals has held that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one resident defendant, the federal court must find that the joinder was proper and remand the cause to state court." <u>Id</u>, at1440-41.

In *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Cir. 1989), the Eleventh Circuit plainly delineated the burden upon the parties alleging removal and the federal court's duty in resolving fraudulent joinder issues. The Eleventh Circuit stated:

> The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent . . . . The test for determining whether or not a defendant has been fraudulently joined is twofold: (1) look to see whether <u>there is no possibility the plaintiff can establish any cause of action</u> against the resident defendant; and (2) look to see

> whether the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court. . . . In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff. . . .

Id. at 156l. (emphasis supplied).

In this case, it should be without question that the case should be remanded to state court for further proceedings. There is clearly the possibility that the Plaintiff could prevail on a claim of negligence against Adams. Adams has not been fraudulently joined in this case and Defendants' removal of this case is completely without merit. There is substantial evidence in the record before this court indicating that Adams failed to perform an adequate inspection of the four wheeler at issue. Also, it is clear that Suzuki had issued a recall for certain four wheelers on the basis that wheel separations were occurring in the field due to the improper assembly. Yet Adams totally failed from all appearances to take any action even though Mitchell's chief concern was the fact that the right front wheel of his four wheeler was out of its correct position. Further, Adams contends that the four wheeler had been wrecked and all damage was due to the alleged wreck. However, this allegation is clearly disputed by Mitchell. Mitchell alleges, to the contrary, that the four wheeler had never been wrecked and that no such damage existed at the time Adams had the four wheeler for inspection. Clearly it is arguable whether a defect in the right front wheel could have been uncovered by Adams during the time it had an opportunity to perform an inspection of the four wheeler. This accident may have been avoided had Adams not acted negligently or wantonly in performing its inspection of the four wheeler's front wheel.

## CONCLUSION

Plaintiffs have demonstrated that Adams is not a fraudulently joined Defendant. Plaintiffs have in fact pled a viable state cause of action against a viable in-state Defendant. Adams was a trained and experienced entity who had the opportunity to inspect the four wheeler prior to the accident. The tragedy is that Adams did not inspect the four wheeler thoroughly when it had the opportunity to do

so. Clearly, Plaintiffs may prove a claim of negligence against Adams pursuant to Alabama state law.

That being the case before this Court, Defendant Adams' Motion to Dismiss is due to be denied and

the case is due to be remanded to Macon County Circuit for any further proceedings.


/s/ Michael G. Strickland
**MICHAEL G. STRICKLAND (STR032)**
Attorney for Plaintiffs

**OF COUNSEL:**
**STRICKLAND & KENDALL, L.L.C.**
420 S. Lawrence Street [36104]
P.O. Box 99
Montgomery, AL  36101-0099
(334) 269-3230
(334) 269-3239 / fax

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing using the CM/ECF which will send notification of such filing to the following on this the _____ day of May, 2007:

Jere F. White, Jr.
S. Andrew Kelly
John D. Mayo
Lightfoot, Franklin & White, LLC
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200

Stanley A. Martin
S. Allen Martin, Jr.
P.O. Box 2526
Opelika, AL 36803

Lindsay B. Erwin
Meacham, Earley & Fowler, P.C.
5704 Veterans Parkway
Columbus, GA 31904

Tabor R. Novak, Jr.
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, Al 36102-2148


/s/ Michael G. Strickland
OF COUNSEL

"EXHIBIT A"

EXHIBIT

A

## IN THE UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| MORRIS MITCHELL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CASE NO. 3:07-CV-418-MEF |
| | ) |
| AMERICAN SUZUKI MOTOR | ) |
| CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

### AFFIDAVIT

Before the undersigned notary public in and for the State of Alabama, appeared Morris Mitchell, who after being duly sworn to tell the truth, deposed and stated:

"My name is Morris Mitchell and I am resident of Macon County, Alabama. I am over the age of nineteen years, and I have personal knowledge of all matters set forth in this affidavit. My wife and I are the owners of the Suzuki Four Wheeler at issue in this lawsuit.

We purchased the Four Wheeler at issue, a Suzuki Model LT-F400FK5, from a dealer in Columbus, Georgia. This dealer was known as Extreme Powersports, Inc. The Four Wheeler was purchased in new condition and to my knowledge all factory warranties applicable to the product were still in force at the time of the accident giving rise to this lawsuit. I had only owned the Four Wheeler for a few months at the time of my accident and I had not engaged in any abusive use of the Four Wheeler. The Four Wheeler was well maintained and was never wrecked or overturned prior to my taking it to Adams Motorsports of Montgomery,

Alabama for service and inspection. Adams Motorsports was the closest Suzuki dealer to my residence and I took the Four Wheeler there out of convenience.

The Four Wheeler had only been in my possession for a short period of time prior to my taking it to Adams Motorsports for service and inspection. Prior to this time, I had only used the vehicle for typical offroad riding. I had engaged in no abusive riding, and had never wrecked or damaged the Four Wheeler. However, a relative of mine happened to be at my home one day and noticed that the right front wheel of the Four Wheeler was turned inward or "toed in" compared to the left front. When the condition was called to my attention, I thought it best to take the vehicle to a dealer for a complete inspection since it was still new and should have been under warranty. I took the Four Wheeler to Adams Motorsports. I was told by Adams personnel that the frame of the vehicle was bent and would need to be replaced. However, to my knowledge, Adams did no repairs to the vehicle and made no reference to the right front wheel at all during my conversations with Adams' personnel. In total, Adams had possession of the Four Wheeler for two weeks or so. Adams certainly had ample opportunity to inspect the right front wheel for defects. Adams also did not mention to me in any way that a March 7, 2005 recall had gone out in my specific four wheeler due to improper fuel tank manufacture. Adams did nothing to inform me of this particular recall.

However, the Four Wheeler was put back into service and shortly thereafter the right front wheel separated from the tie rod. This caused me to lose control of the vehicle and caused my accident. Prior to this time, no one had informed me of a problem with Suzuki

2

Four Wheelers having similar accidents. Adams should have told me about the other accidents and I am aware that there was a recall issued for Suzuki Four Wheelers for this very problem. Adams apparently did not inspect, repair, or adjust the right front wheel to my knowledge when they had the opportunity to do so. Had I been informed of the problem with other Four Wheelers, I certainly would have had the vehicle properly repaired prior to putting it back into service."

Further Deponent saith not.

**MORRIS MITCHELL**

SWORN TO AND SUBSCRIBED before me this $\underline{30^{th}}$ day of $\underline{May}$, 2007.



Notary Public
My Commission Expires: $\underline{10/09}$

**MICHAEL G. STRICKLAND(STR032)**
Attorney for the Plaintiffs

OF COUNSEL:
STRICKLAND & KENDALL, L.L.C.
Post Office Box 99
Montgomery, Alabama 36101-0099
(334) 269-3230
(334) 269-3239 / fax

3

B

This is **G o o g l e**'s cache of http://www.usrecallnews.com/2005_11_01_archive.html as re
08:03:24 GMT.
**G o o g l e**'s cache is the snapshot that we took of the page as we crawled the web.
The page may have changed since that time. Click here for the current page without highlighting.
This cached page may reference images which are no longer available. Click here for the cached text only.
To link to or bookmark this page, use the following url: `http://www.google.com/search?`
`q=cache:DZOiSUZGsOMJ:www.usrecallnews.com/2005_11_01_archive.html+suzuki+four+wheeler+recall+&hl=en&gl=us&ct=`

*Google is neither affiliated with the authors of this page nor responsible for its content.*

These search terms have been highlighted: **suzuki four wheeler recall**

# US Recall News Blog - Recalled Product Discussion

**A Blog About Private & Government Recalls**



ere to go back to
call News
age

## FRIDAY, NOVEMBER 18, 2005

CPSC Recalls Almost 20,000 **Suzuki** King Quad ATV 4-Wheelers



November 17, 2005
This is for **SUZUKI** 4-
**Wheeler** Recalls. To see
YAMAHA ATV Recalls, Click
HERE.

Name of Product: **Suzuki
2005 model year LT-**

**A700XK5 King Quad ATVs**

The Consumer Product Safety Commision (CPSC) and the , American
**Suzuki** Motor Corporation Announce The **Recall** of 2005 King Quad All-
Terrain Vehicles ( 4-Wheelers ).

The following product safety **recall** was conducted voluntarily by **Suzuki** in
cooperation with the CPSC. **Consumers should stop using the product**

**immediately** unless otherwise instructed.

Units: About 19,600

Manufacturer: **Suzuki** Motor Corp., of Japan

Distributors: American **Suzuki** Motor Corp., of Brea, Calif.; Montgomery Motors Ltd., of Honolulu, Hawaii; **Suzuki** Del Caribe, Inc., of Rio Piedras, Puerto Rico.

Hazard: Use of an **improper tie rod adjustment procedure during assembly** could lead to separation of the tie rod end housing from the attachment shaft. **This could cause the rider to lose control of the ATV and result in injury or death.**

Incidents/Injuries: *American **Suzuki** has received eight reports of tie rod enc separation, and no reports of injuries*

Description: The **recall** involves **Suzuki** 2005 model year LT-A700XK5 King Quad ATVs. They are adult-size ATVs designed for use by riders age 16 and older. These ATVs are available in yellow, green, or red and have the King Quad model name on the side of the fuel tank.

Sold by: **Suzuki** dealers nationwide from September 2004 through October 2005 for about $7,200.

**Consumers should stop using these ATVs immediately and contact a local Suzuki dealer to schedule an appointment for repair service.**

For more information, consumers can call American **Suzuki** Customer Service Department at (800) 444-5077 between 8:30 a.m. and 5 p.m. PT Monday through Friday, or visit the firm's Web site at www.suzukicycles.com

VIOUS
TS

oduct Recall
e - Are Greenies
reats Going to Be
ed?

3-in-1 Crib with
Logo by Simplicity
mportant Recall !

t Recalls on US
News

s Not Showing on
Notices

Corporations can
tiate" with our
nment Agencies on
rous Products...

Says "Enough is
h" to ATV
acturers

Eat the Ackee!
nd Drug
istration Recalls
can Fruit

omputers Recalls
ook Computer
ies

ecall Bonanza -



March 7, 2005

# SAFETY RECALL CAMPAIGN
# LT-A400FK5 & LT-F400FK5 EIGER ATVs
## FUEL TANK INSPECTION AND REPLACEMENT PROGRAM

Dear Suzuki Owner,

This notice is sent to you in accordance with the requirements of the Consumer Product Safety Act.

### What is the reason for this notice?
Suzuki Motor Corporation has decided that a defect which relates to product safety exists in certain 2005 model year LT-A400FK5 and LT-F400FK5 Eiger ATVs. In cooperation with the U.S. Consumer Product Safety Commission, Suzuki Motor Corporation is conducting a Safety Recall Campaign for these ATVs.

### What is the problem?
Suzuki Motor Corporation has determined that certain 2005 model year Eiger ATVs were assembled with an improperly manufactured plastic fuel tank. The plastic material in a certain area of the improperly manufactured tanks is too thin due to a problem with the blow molding process. This thin portion of the tank may develop a fuel leak. Leakage of fuel from the fuel tank in the presence of an ignition source presents a fire safety hazard and risk of injury or death.

### ⚠ WARNING

## DO NOT OPERATE YOUR AFFECTED
## 2005 model year LT-A400FK5 or LT-F400FK5 Eiger ATV

To minimize the risk of injury or death, do not ride, or allow anyone else to ride, your ATV. We also recommend that you store your ATV in a well ventilated area away from any source of ignition (e.g. gas water heater, gas dryer etc.) until your ATV has been inspected by your Suzuki dealer.

### What is Suzuki doing to solve the problem?
Your dealer will inspect the date of manufacture code on the fuel tank to determine if it needs to be replaced. This procedure is simple and only takes a short amount of time to complete. If necessary, the dealer will replace the fuel tank assembly. Parts are available now. There will be no charge to you for any recall service related parts or labor.

*Continued* ⇨

## What should you do?

Bring your ATV to your dealer for inspection and possible repair. To aid your dealer and Suzuki, make sure you are prepared for the recall service by taking the following steps:

√ Contact your Suzuki dealer as soon as possible to set an appointment for the recall service

√ Plan your personal schedule so you will not miss your recall service appointment

√ When you transport your ATV to the dealership, take care to protect it from damage and load it per the recommendations in the ATV's Owner's Manual

√ Clean your ATV thoroughly, so your dealer can perform the recall service quickly

## What to do if you receive this letter in error?

This notice was mailed to you according to the most current information we have available. If you no longer own a 2005 model year LT-A400FK5 or LT-F400FK5 Eiger ATV (Camo and Limited models are not included) or never owned one, please fill out and return the post card included with this letter. If you sold your ATV, please forward this information to the person to whom you sold your ATV.

## Who to contact if you experience problems?

Your Suzuki dealer can provide you the fastest response to your questions or concerns about the fuel tank inspection program. If you have any difficulty with this recall campaign you may contact the American Suzuki Customer Service Department for assistance using the direct Customer Service telephone line at 714-572-1490. You may also leave a brief message at 800-444-5077 and a representative from the American Suzuki Customer Service Department will get in contact with you.

## If you have any questions.

If you have any questions about this notice, please feel free to contact your local Suzuki dealer.

We deeply regret and apologize for any inconvenience this recall campaign causes you. We earnestly hope you understand that your safety, satisfaction and riding pleasure are priorities for Suzuki.

Sincerely,

American Suzuki Motor Corporation

EXHIBIT

tabbies®

D

1
Ø

# ADAMS MOTORSPORTS
528 North Eastern Blvd
Montgomery, AL 36117-
(334) 271-5500

1                        REPAIR ORDER INVOICE - DUPLICATE
ØCashier: SERVICE DEPT. CLOSE OUTS   Repair Order # 9900009927          Invoice # 25013176

Sold to MITCHELL, MORRIS (6577335)              Invoice Date  9/22/05
        124 SPRUCE STREET                           Date In  9/ 2/05
        SHORTER, AL 36075-                         Promised  0/ 0/ 0
        Home Phone 657-7335      Work 273-9457    Closed Out  9/22/05

| Yr Make | Model | Color | Class Plate # | VIN | Key Board# Hrs/Odom |
|---------|-------|-------|---------------|-----|---------------------|
| 05 SUZUKI | EIGER | YELLOW | | 52AAK46A657101180 | 106 |

------------------------------------------------------------------------
Job: WRECK ESTIMATE
Yr: 05  Make: SUZUKI  Model: EIGER  Color: YELLOW  Class:

| Part #/Labor Code  Description | Src Cat Tech Hrs/Qty | Total |
|-------------------------------|----------------------|-------|
| Labor | TB   1.00 | 60.00 |
| Resolution | | |
| 1. FRAME IS BENT WILL NEED FRAME REPLACED TO CORRECT DAMAGE. | | |
| EST. FOR REPAIR IS $2583.70 | | |

Job Subtotal $     60.00

------------------------------------------------------------------------
| Job | Parts | Labor | Sublet | Other | | |
|-----|-------|-------|--------|-------|-----|-----|
| Breakdown -> | .00 | 60.00 | .00 | .00 | Total of all Jobs | 60.00 |

THANK YOU VERY MUCH FOR YOUR BUSINESS.....        Before Tax Total   60.00
                                                       Sales Tax    .00
HAVE A GREAT DAY AND PLEASE COME BACK TO SEE US.......  ==========
                                                 * * Total Amount Due   60.00
        Check/CC# 1035                              Check Tendered   60.00

                Wednesday, August 2nd, 2006  2:15 pm