IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MORRIS MITCHELL and DENISE MCPHERSON MITCHELL,

Plaintiffs,

v.

AMERICAN SUZUKI MOTOR CORPORATION; et al.,

Defendants.

CIVIL ACTION NO.: 3:07-CV-418-MEF

**RESPONSE TO MOTION TO REMAND**

NOW COME American Suzuki Motor Corporation ("ASMC") and Suzuki Manufacturing of America Corporation ("SMAC") (together "Defendants") and file this Response to Plaintiffs' Motion to Remand, and respectfully request the Court to deny Plaintiffs' Motion to Remand, showing the Court as follows:

1. On or about April 10, 2007, Plaintiffs Morris Mitchell and Denise McPherson Mitchell ("Plaintiffs") filed a Complaint in the Circuit Court of Macon County, Alabama, against numerous defendants including ASMC, SMAC, Extreme Powersports, Inc. and Adams Motorsports, Inc. ("Adams"), which had been fraudulently joined.[1]

2. The Defendants filed a timely Notice of Removal based on the fraudulent joinder of Adams, which removed the state court action to the United States District Court for the Middle District of Alabama. Plaintiffs subsequently filed a Motion to Remand alleging a purported cause of action against Adams for negligence. However, as outlined in the Notice of Removal and in this Response to the Plaintiffs' Motion to Remand, there is no possibility that the

[1] Diversity of citizenship exists between Plaintiffs and all properly joined defendants.

Plaintiffs could prove a cause of action against Adams for negligence, and thus the Plaintiffs' Motion to Remand Should be denied.

**DEFENDANT ADAMS MOTORSPORTS HAS BEEN FRAUDULENTLY JOINED**

**A.     Negligent Failure to Warn or Recall**

3.      The negligence count in the Complaint specifically states that Defendants, which would include Adams, "negligently designed, manufactured, sold, and failed to warn or recall the subject [ATV]" and that this negligence was the proximate cause of the Plaintiff's injuries." See Complaint at ¶¶ 54 - 56.

4.      However, not one of these allegations is even remotely supported by the facts. As stated in the Complaint, the subject ATV was not purchased from Defendant Adams. Id., at ¶ 12; see also Notice of Removal Exhibit C. According to the Complaint and upon information and belief, Plaintiffs purchased the subject ATV on July 30, 2005, from Extreme Powersports, Inc. in Columbus, Georgia. Nor did Defendant Adams participate in any way with the design, engineering, manufacture, assembly or sale of the subject ATV. See Notice of Removal Exhibit C. Thus, Adams cannot possibly be found to have negligently designed, manufactured, or sold the subject ATV. The remaining negligence claim in the Complaint, negligent failure to warn or recall the ATV, is the focus of the Plaintiffs' motion to remand; however, this claim also cannot possibly be proved against Adams.

5.      According to the Complaint, on September 2, 2005, Plaintiffs took their 2005 LT-F400F Suzuki ATV to Adams because of "a minor problem which needed a repair." See Complaint at ¶¶ 15-16. Plaintiff Morris Mitchell alleges in his affidavit, attached as Exhibit A to

the Motion to Remand, that he took the ATV to Adams for an inspection because the front right wheel was "toed in."[2] See Motion to Remand Exhibit A.

6. Plaintiffs again rely on a front tie rod recall associated with another model ATV, as evidence that at the time the ATV was in Adams possession Adams knew or should have known of the possibility of the problem and thus should have warned the Plaintiffs. See Motion to Remand, at p. 2. The Plaintiffs erroneously state that this front tie rod recall on a different model ATV "clearly indicated a wheel assembly problem to Suzuki dealers." Id. Plaintiff Mitchell's affidavit alleges that Adams knew, based on the front tie rod recall, that Suzuki ATVs had a problem, that Adams did not inform him or otherwise warn him of the problem, and if Adams had informed him he "certainly would have had the vehicle properly repaired." See Motion to Remand Exhibit A.

7. The Plaintiff is simply wrong. As outlined in the Notice of Removal and the affidavits attached thereto, none of the recalls mentioned in the Plaintiffs' Complaint or Motion to Remand concerned the subject ATV. However, since the Plaintiffs insist on arguing that somehow the non-existence of a front tie rod recall associated with the subject ATV is evidence that Adams had a duty to recall the ATV or warn the Plaintiff of the possibility, a review of the facts relating to the recalls is necessary again.

8. Again, the front tie rod recall bulletin referred to in the Complaint and Motion to Remand was issued on October 19, 2005, after the subject ATV was taken to Defendant Adams (Plaintiffs' ATV was taken to Adams on September 2, 2005). The recall bulletin was for a steering tie rod end replacement program on Suzuki 2005 LT-A700X ATVs. See Notice of Removal Exhibit B. The Suzuki ATV which is the subject of this suit is a 2005 Suzuki LT-

[2] Although not specifically stated, presumably this is the "minor problem" to which the Plaintiffs refer in the Complaint.

F400F ATV, which is different model than the ATV model covered by the recall bulletin. Id. Moreover, no recall bulletins concerning the steering tie rod end replacement have been issued for 2005 Suzuki LT-F400F ATVs, which is the ATV model referred to in the Complaint. Id. Therefore, clearly Adams did not have had a duty to recall the subject ATV or warn the Plaintiffs based on a recall bulletin that (1) did not exist at the time the subject ATV was taken to Adams and (2) when it was issued, was not even for the same model ATV.

9. Finally, in a desperate attempt to establish liability for negligence, the Plaintiffs argue that the fuel tank recall somehow makes it more likely that Adams should have known about the tie rod recall. However, the fuel tank recall bulletin mentioned in the Motion to Remand is not even remotely associated or connected in any way with the injuries or accident alleged by the Plaintiffs, and thus has no bearing on this action at all. In addition, the fuel tank recall also does not concern the Plaintiffs' ATV. The fuel tank recall only applied to certain LT-F400F and LT-A400F ATVs. The Plaintiffs' ATV does not fall within the range of LT-F400Fs affected by this recall.

**B. Negligent Inspection**

10. Mixed in with the Plaintiffs' other unsupportable claims in the Motion to Remand is a claim for negligent inspection, which was not originally raised in the complaint. However, as the Plaintiffs pointed out in their Motion to Remand, the Court can only remand the case if the complaint states a valid cause of action. See Motion to Remand, at p.5 (citing Coker v. Amoco Oil Co., 709 F.2d 1422, 1440-41 (11th cir. 1983). Therefore, the Court should not even consider any purported new causes of action only raised for the first time in the Plaintiffs' Motion to Remand. This is obviously an attempt to subvert this Courts jurisdiction and confuse the real

issues in this case. However, since negligent inspection was arguably raised as a basis for remand, Defendant will show that such a claim also can not possibly be proved against Adams.

11. In a negligent inspection case, the plaintiff bears the burden of proving 1) that the defendant had a duty, or assumed a duty by voluntarily undertaking the inspection, 2) the scope of that duty, 3) that that duty was breached, 4) that the plaintiff suffered an injury, and 5) that the injury was proximately caused by that breach. Haddock v. Multivac, Inc., 703 So.2d 969, 972 (Ala. Civ. App. 1996).

12. The only evidence that explains the work the Plaintiffs asked Adams to perform is an invoice signed by Plaintiff Morris Mitchell which states that Adams is performing a "wreck estimate." Indeed, the affidavit of owner Terry Adams clearly shows that Plaintiffs brought the ATV to Adams to obtain a wreck estimate for repairs to the ATV. See affidavit of Terry Adams, attached hereto as Exhibit A. Plaintiff Morris Mitchell signed an invoice requesting Adams to give the Plaintiffs an estimate to repair damage to the wrecked ATV. Id. Adams prepared an estimate outlining that the ATV would require extensive repairs in order to be in proper working condition. Id. Adams quoted Plaintiffs $2,583.00 to have the frame replaced, and the Plaintiffs refused to allow Adams to make the needed repairs.

13. The Plaintiffs' alleged negligent inspection claims center on an allegation that Adams was negligent in inspecting the ATV "when it had the opportunity to do so" and not warning the Plaintiffs of the alleged problem with the tie rod. As outlined above, the ATV was brought to Adams for a wreck estimate, which is evidenced by the signed invoice. Adams submitted the estimate to the Plaintiffs, and the Plaintiffs refused to allow Adams to make the repairs. Preparing a wreck estimate did not obligate Adams with the duty to perform a safety inspection of the ATV or warn the Plaintiffs of an unknown problem associated with different

model ATVs. The Plaintiffs, nevertheless, would have the Court think that they "certainly would have had the vehicle properly repaired" if they had been warned; however, the Plaintiffs' own exhibits show that Adams did warn Plaintiffs that the ATV was in such a damaged condition that the frame needed to be replaced, and Plaintiffs refused to make the needed repairs. See Motion to Remand Exhibit D.

14. Based on the facts and allegations made in the Complaint there is no possibility that the Plaintiffs can establish a cause of action against Defendant Adams. Accordingly, Defendant Adams has been fraudulently joined, its citizenship must be disregarded for purposes of removal, and is not a proper basis for remanding this action to state court.

/s/ John D. Mayo
One of the Attorneys for Defendants
American Suzuki Motor Corporation and Suzuki Manufacturing of American Corporation

OF COUNSEL:
Jere F. White, Jr. (WHITJ1759)
S. Andrew Kelly (KELLS3760)
John D. Mayo (MAYOJ2469)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
(205) 581-0700
(205) 581-0799 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael G. Strickland, Esq.
Blaine C. Stevens, Esq.
Strickland & Kendall, LLC
420 South Lawrence Street
Montgomery, AL 36104

Jock M. Smith, Esq.
Brian P. Strength, Esq.
Valerie R. Russell, Esq.
Cochran, Cherry, Givens & Smith, P.C.
PO Box 830419
Tuskegee, AL 36083

Stanley A Martin
S. Allen Martin Jr.
P.O. Box 2526
Opelika, AL 36803

Lindsay B. Erwin
Meachem, Earley and Fowler, P.C.
5704 Veterans Parkway
Columbus, GA 31904

Tabor R. Novak, Jr.
Ball, Ball, Mathews & Novak, P.A.
P.O. box 2148
Montgomery, AL 36102

/s/ John D. Mayo
Of Counsel

AFFIDAVIT

STATE OF ALABAMA )

COUNTY OF MONTGOMERY )

BEFORE ME the undersigned authority personally appeared Terry Adams, who being first duly sworn did state and depose:

I am Terry Adams. I am over the age of 21 and I make this Affidavit on my own personal knowledge and based upon information contained in reliable records maintained in the ordinary course of business by Adams Motorsports, Inc. (herein sometimes called "Adams") I am the Vice-President and Treasurer of Adams.

At the request of the attorneys for Adams I have reviewed the affidavit made by Morris Mitchell, and the Motion to Remand filed on his behalf.

On September 2, 2005, Morris Mitchell brought his Four-wheeler to the Adams Service Department. Attached as Exhibit "A" is a true and correct copy of the front and back of the work order for Mr. Mitchell's Four-Wheeler. The description of the work than Mr. Mitchell wanted Adams to perform was "Wreck estimate". To insure that there is no misunderstanding between Adams and its customers, Adams requires the customer to sign the work order to confirm the customer understands exactly what service Adams is expected to perform. Mr. Mitchell signed the work order confirming the work to be performed.

The service department examined the Four-wheeler and determined that the frame was bent and would require extensive repairs. The work order indicates that the

EXHIBIT
tabbies
A

service technician left Mr. Mitchell a message about his findings on September 2nd at 12:45 (see Tech Notes on Exhibit "A")

On September 22, 2005 Mr. Mitchell returned to Adams. He was presented with the Repair Order Invoice attached as Exhibit "B" which he signed. The Repair Order Invoice described the Resolution for the Four-Wheeler condition to be: FRAME IS BENT. WILL NEED TO BE REPLACED TO CORRECT DAMAGE." The estimated cost to repair the damage to the Four-wheeler was $2583.70. Mr. Mitchell would not permit Adams to perform the repairs. The only charge to Mr. Mitchell was $60.00 which was the cost of performing the estimate.

It is the policy of Adams to perform any recalls when Adams has a unit affected by a recall in its service department. Had there been a recall that affected Mr. Mitchell's Four Wheeler when it was in Adams' Service Department in September, 2005, it would have been performed at no cost to him.

The 2005 Suzuki Four-wheeler described in the Complaint was never the subject of a recall bulletin that related to the front tie rod. It was not among the units which were the subject of the fuel tank recall referred to in the Plaintiff's Motion to Remand. That Recall applied to a limited number of Suzuki Models sold between August 2, 2004 and August 26, 2004 which were manufactured in Rome, Georgia.

There is nothing that Adams did or failed to do which could have contributed in any manner to the accident described in the complaint. The Four-wheeler was at Adams on one occasion only. It came in to Adams in a damaged condition and left in exactly the same condition.

I am familiar with the duties of a dealership such as Adams when presented with a unit, such as that of Mr. Mitchell, for a "Wreck Estimate". Adams fully performed its duties and responsibilities in its dealings with Mr. Mitchell.

TERRY ADAMS

SWORN TO and SUBSCRIBED before me this 7th day of June, 2007.

NOTARY PUBLIC

Commission expires: 01/31/2011

# ADAMS MOTORSPORTS

KAWASAKI SUZUKI POLARIS KTM
528 Northeast Blvd. • Montgomery, Alabama 36117
(334) 271-5500 • (334) 271-5679 Fax

0-2359

| NAME | HOME PHONE | DATE IN |
|---|---|---|
| Morris Mitchell | 657-7335 | 9/2/05 |
| ADDRESS | WORK PHONE | |
| 124 Spruce Rd | 273-9457 | |

| CITY | STATE | ZIP | DATE OF PURCHASE |
|---|---|---|---|
| Shorter | Ala | 36075 | |

| CUST. ORDER # | MODEL # | VIN # |
|---|---|---|
| 9927 | | 5SAAK4[illegible] |

| YEAR | MAKE | MODEL | LICENSE NO. | MILEAGE | COLOR |
|---|---|---|---|---|---|
| 2005 | [illegible] | Suzuki | | [illegible] | Yellow |

## CHECK LIST / TECH NOTES

| CHECK LIST | TECH NOTES |
|---|---|
| Change oil & filter (4-strokes) | |
| Top off oil (2-strokes) | [illegible] |
| Check valve clearance | |
| Service/change air filter(s) converter filter | |
| Service and test battery | |
| Test/top off coolant | |
| Top off/changes transmission fluid | |
| Set tire pressure, check tread wear | |
| Check major nuts and bolts | |
| Top off inspect brake fluid | |
| Check brake hoses/cables | |
| Check brake free play | |
| Check brake wear | |
| Adjust brakes | |
| Adjust throttle cable/E.T.C. switch | |
| Adjust, lube drive chain | |
| Check/change final drive fluid | |
| Check or adjust clutch | |
| Check/change sparkplugs | |
| Adjust idle | |
| Lubricate throttle cable | |
| Grease and lubricate unit | |
| Check radiator | |
| Check steering | |
| Check/align lights and turn signals | |
| Test ride | |
| Note needed repairs | |
| **OPTIONAL SERVICE AT EXTRA CHARGE** | |
| Synchronize carbs | |
| Clean muffler diffuser | |
| Change fork oil | |
| Replace coolant | |
| Replace brake fluid | |
| Replace clutch fluid | |
| True rims | |
| Balance Tires | |
| Change suspension settings | |
| Pack bearings | |

## DESCRIPTION OF WORK TO BE PERFORMED

Wreck estimate

After notification of completed repairs, any additional repairs will be customer's responsibility

Initial ______

☐ MANUFACTURER WARRANTY

☐ EXTENDED WARRANTY

LABOR RATE $60 / hour • Minimum is 1 hour

I hereby authorize the above repair work to be done along with the necessary material, and hereby grant you and/or your employees permission to operate the vehicle herein described on streets, highway or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above motorcycle to secure the amount of repairs thereto.

NOTICE

A Storage fee of $15.00 per day will be charged if vehicle is not picked up within 3 days after notification of completion. Not responsible for loss or damage to vehicle or articles left on vehicle in case of fire, theft or any other cause beyond our control.

X [signature]

| | AMOUNT |
|---|---|
| TOTAL LABOR | |
| TOTAL PARTS | |
| ACCESSORIES | |
| GAS, OIL & GREASE | |
| PICK-UP | |
| OUTSIDE REPAIRS | |
| SHOP SUPPLIES or ENVIRO. CHARGES | |
| ____% TAX | |
| **TOTAL AMOUNT** | |

## RECOMMENDED REPAIRS

PAID BY: CASH ☐ CHECK ☐ CREDIT CARD ☐

KAW/POL MC VISA AMEX OTHER

CALL DATE ______ LEFT MSG ______

PICK UP DATE ______

The limited warranties applying to the parts listed hereon are those which may be offered by the manufacturer. We hereby expressly disclaim all warranties, either expressed or implied warranties of the merchantability or fitness for a particular and neither assume, nor authorize any other person to assume for the company any liability in connection with the sale of the part(s) and/or service. Buyer shall not be entitled to recover from the company any consequential damages, to property, damages for loss of time, loss of profits or income, or any other incidental damages.

| Resolution |
| --- |
| Needs Frame + Possibly A-Arms. |

| WORK PERFORMED | ESTIMATED COST QUOTED CUSTOMER | MECH. NAME | HR. | MIN. | TIME CLOCK |
| --- | --- | --- | --- | --- | --- |
| | | | | | '05 SEP 3 AM 9:53 ON |
| | | | | | '05 SEP 3 AM 10:22 OFF |
| | | | | | ON |
| | | | | | OFF |
| | | | | | ON |
| | | | | | OFF |
| | | | | | ON |
| | | | | | OFF |
| | | | | | ON |
| | | | | | OFF |
| | | | | | ON |
| | | | | | OFF |
| | | | | | ON |
| | | | | | OFF |
| | | | | | ON |
| | | | | | OFF |
| | | | | | ON |
| | | | | | OFF |

| ESTIMATE AMOUNT | PARTS & LABOR | | |
| --- | --- | --- | --- |
| ADDITIONAL AUTH. AMT. | TIME / DATE | BY | |
| ADDITIONAL AUTH. AMT. | TIME / DATE | BY | |

PROB - CONT

DEFECT DESC

REPAIR DESC

FAILED PART #

LABOR - JOB CODE

FLAT RATE TIME

DEF - PROB CODE

CUST. CONT. CODE

Paid Check #1031

ADAMS MOTORSPORTS
528 North Eastern Blvd
Montgomery, AL 36117-
(334) 271-5500

SERVICE REPAIR ORDER
Repair Order # 3900009927

R O for MITCHELL, MORRIS (6577335)
124 SPRUCE STREET
SHORTER, AL 36075-
Home Phone 657-7335 Work 273-9457

Date Printed 9/ 3/05
Date In 9/ 2/05
Promised 0/ 0/ 0

| Yr Make | Model | Color | Class | Plate # | VIN | Key | Board# | Hrs/Odom |
|---|---|---|---|---|---|---|---|---|
| 05 SUZUKI | EIGER | YELLOW | | | 52AAK46A657101180 | | | 106 |

Job: WRECK ESTIMATE
Yr: 05 Make: SUZUKI Model: EIGER Color: YELLOW Class:

| Part #/Labor Code | Description | Src | Cat | Tech | Hrs/Qty | Total |
|---|---|---|---|---|---|---|
| Labor | | | | TB | 1.00 | 60.00 |

Resolution
1. FRAME IS BENT WILL NEED FRAME REPLACED TO CORRECT DAMAGE.
EST. FOR REPAIR IS $2583.70
Job Subtotal $ 60.00

| Job | Parts | Labor | Sublet | Other | | |
|---|---|---|---|---|---|---|
| Breakdown -> | .00 | 60.00 | .00 | .00 | Total of all Jobs | 60.00 |

THANK YOU VERY MUCH FOR YOUR BUSINESS.....

HAVE A GREAT DAY AND PLEASE COME BACK TO SEE US.......

Before Tax Total 60.00
Sales Tax .00
Repair Order Total 60.00