IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MORRIS MITCHELL, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 3:07-cv-418-MEF |
| ) | (WO - Do not publish) |
| AMERICAN SUZUKI MOTOR ) | |
| CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the Court on Plaintiffs' Motion to Remand (Doc. # 20). For the reasons stated herein, the motion is due to be GRANTED.

**II. STANDARD**

A civil case filed in state court may be removed by the defendant to federal court if the case could have been brought in federal court originally. 28 U.S.C. §1441(a). Federal courts have diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and there is complete diversity of the parties, meaning that every plaintiff's state of residency is diverse from every defendant. *See* 28 U.S.C. §1332; *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996), *abrogated on other grounds*, 204 F.3d 1069, 1072 (11th Cir. 2000).

On a motion to remand, the party seeking removal has the burden of establishing federal jurisdiction. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (citing *Tapscott*

*v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996)).

An action may be removed if a nondiverse defendant was fraudulently joined. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Fraudulent joinder can occur in three situations,[1] but Defendants focus only on the situation "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Id.* (citations omitted). Under this type of fraudulent joinder, the joinder is not fraudulent "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against the resident defendant." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983)); *see Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007) (remand necessary "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint" (citing *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006)).

The Court should "evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d 1538 (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). The Court should "make[] these determinations based on the plaintiff's

---

[1] The other two types of fraudulent joinder are "when there is outright fraud in the plaintiff's pleading of jurisdictional facts" and "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287.

pleadings at the time of removal," and it "may consider affidavits and deposition transcripts submitted by the parties." *Id.*

### III. FACTS AND PROCEDURAL BACKGROUND

The pleadings, affidavits, and documentary evidence, when viewed in the light most favorable to the Plaintiffs, establish the following relevant facts:

On July 30, 2005, Plaintiff Morris Mitchell ("Plaintiff") purchased a 2005 Suzuki four-wheeler, model LT-F400FK5 ("the vehicle"), from Defendant Extreme Powersports, Inc. ("Powersports"). (Doc. # 1-2, ¶ 12). Defendant Goldcar Lending, Inc. ("Goldcar") financed the purchase of the vehicle. (*Id.* ¶ 13). Defendants American Suzuki Motor Corporation ("American Suzuki"), Suzuki Manufacturing of America Corporation ("Suzuki Manufacturing"), Suzuki Motor Corporation ("Suzuki Motor"), and Powersports designed, engineered, manufactured, and marketed the vehicle. (*Id.* ¶ 14).

Some time before September 2, 2005, Plaintiff's relative noticed that the vehicle's right front wheel was turned inward, or "toed-in," compared to the left wheel. Aff. of Morris Mitchell (Doc. # 20-2, at 2). After becoming aware of this condition, Plaintiff "thought it best to take the vehicle to a dealer for a complete inspection." (*Id.*). Adams performed a "wreck estimate" and informed Plaintiff that the frame of the vehicle was bent and needed to be replaced to correct the damage. (*Id.*); Aff. of Terry Adams (Doc. # 13, at 8); Repair Order Invoice (Doc. # 20-5). To Plaintiff's knowledge, Adams's personnel made no

reference to the right front wheel of the vehicle during their conversations with Plaintiff.[2] (Doc. # 20-2, at 2). Plaintiff declined to authorize Adams to repair the frame, and Adams did not make any repairs to the vehicle. (Doc. # 13, at 8); (Doc. # 20-2, at 2). Adams returned the vehicle to Plaintiff. (Doc. # 20-2, at 2). Adams had possession of the vehicle for approximately two weeks. (*Id.*).

On January 11, 2006, as Plaintiff drove the vehicle, the right front tire partially disconnected, which caused the vehicle to roll over. (*Id.* ¶ 22). Plaintiff was thrown into several trees and suffered severe injuries. (*Id.* ¶¶ 22, 25).

On March 29, 2007, Plaintiffs, who are citizens of Alabama, filed an eight-count complaint in the Circuit Court of Macon County, Alabama. (Doc. # 1-2, at 8) against the following Defendants:

(1) American Suzuki, which is a foreign corporation with its principal place of business in California;

(2) Suzuki Manufacturing, which is a foreign corporation with its principal place of business in Georgia;

(3) Suzuki Motor, which is a foreign corporation that does business in Alabama;

---

[2] Two recall notices were discussed in the parties' briefs. On March 7, 2005, Suzuki recalled 2005 model LT-F400FK5 ATVs, which is the model involved in this case. (Doc. # 20-4). The March 7 recall was related to improper fuel tank manufacture. On October 19, 2005, Suzuki recalled 2005 model LT-A700X ATVs, which is not the model involved in this case. (Doc. # 20-3); Aff. of Alex Butt (Doc. # 13, at 6). The October 19 recall was related to the steering tie rod. It is undisputed that no steering tie rod recall was issued with respect to Plaintiffs' ATV, and Adams did not inform Plaintiff of either recall.

(4)     Powersports, which is a foreign corporation with its principal place of business in Georgia;

(5)     Goldcar, which is a foreign corporation with its principal place of business in Georgia; and

(6)     Adams, which is an Alabama corporation.

Plaintiffs assert five of their eight claims against Adams. Counts One and Two are brought under the Alabama Extended Manufacturers Liability Doctrine. Plaintiffs claim that Adams and other Defendants "designed, engineered, tested, manufactured, distributed, and marketed" the vehicle, which was "unreasonably dangerous and defective" from the time it was manufactured through the time of the collision that injured Plaintiff. (Doc. # 1-2, ¶ 32, 37). According to Plaintiffs, Adams and other Defendants "knew, or in the exercise of reasonable care, should have known, the subject vehicle was unreasonably dangerous when being used in a reasonable and foreseeable manner." (*Id.* ¶ 40). Specifically, the vehicle, "as designed, had a substantial propensity for the component parts to break and/or malfunction under foreseeable driving conditions." (*Id.* ¶ 38). However, Adams and other Defendants "failed to warn or otherwise notify the intended users or consumers of the dangerously defective conditions." (*Id.* ¶ 44).

Count Three alleges that Adams and the other Defendants "negligently designed, manufactured, sold, and failed to warn or recall" the vehicle, and this negligence directly and proximately caused Plaintiff's injuries. (*Id.* ¶ 55-56). Count Four alleges that Adams and

the other Defendants "wantonly designed, manufactured, sold, and failed to warn or recall" the vehicle, and this wantonness directly and proximately caused Plaintiff's injuries. (*Id.* ¶ 58-59).

On May 14, 2007, American Suzuki and Suzuki Manufacturing removed the case to this Court and argued that, even though Adams is a citizen of Alabama, this Court has diversity of citizenship jurisdiction because Adams was fraudulently joined as a Defendant. (Doc. # 1). On May 15, 2007, Adams filed a Motion to Dismiss, or in the alternative a Motion for Judgment on the Pleadings. (Doc. # 13). Plaintiffs' response contained a Motion to Remand. (Doc. # 20).

## IV. DISCUSSION

The Court will first address the issue of whether there is a possibility that an Alabama court would find that the complaint stated a claim of negligent inspection against Adams. To succeed on a negligent inspection claim, a plaintiff must show "1) that the defendant had a duty, or assumed a duty by voluntarily undertaking the inspection, 2) the scope of that duty, 3) that that duty was breached, 4) that the plaintiff suffered an injury, and 5) that the injury was proximately caused by that breach." *Haddock v. Multivac, Inc.*, 703 So. 2d 969, 972 (Ala. Civ. App. 1996) (citing *Clark v. Floyd*, 514 So. 2d 1309, 1314 (Ala.1987)).

Rule 8(a) of the Alabama Rules of Civil Procedure sets for the general pleading requirement:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and

>plain statement of the claim showing that the pleader is entitled to relief, and
>(2) a demand for judgment for the relief the pleader seeks.

Ala. R. Civ. P. 8(a). Furthermore, "[n]o technical forms of pleading or motions are required," and "[a]ll pleadings shall be so construed as to do substantial justice." Ala. R. Civ. P. 8(e)(1), (f).

In Counts Three and Four, Plaintiffs claim that Adams negligently and wantonly "failed to warn" them that the vehicle was unreasonably dangerous. In the factual allegations, Plaintiff stated that the vehicle was defective when Plaintiff took it to Adams for repair, and Adams "failed to discover the defects and/or notify Plaintiffs of the tie rod recall or the danger of not repairing the front tie rod." (Doc. # 1-2, at 13).

There is a possibility that an Alabama court would find that Plaintiffs stated a claim for negligent inspection against Adams. The complaint contained factual allegations that are sufficient to put Adams on notice of a claim for negligent inspection.

Defendants have not satisfied their burden of proving that Adams was fraudulently joined. There is no evidence of what Adams's "wreck estimate" involved other than the observation that the frame would need to be replaced to correct damage to the vehicle. Plaintiff stated that he "thought it best" to have a "complete inspection," but there is no evidence that he actually asked for a complete inspection. The Court can infer that Plaintiff informed Adams that the front tire was "toed-in" because that is what prompted Plaintiff to bring the vehicle to Adams. There is no evidence about scope of the frame repair that was the subject of the "wreck estimate" and, specifically, whether it would have involved fixing

the "toed-in" front tire. In fact, there is no evidence about whether the frame and the front tire are related in any way.

Based on the evidence before the Court, and interpreting the factual allegations in the light most favorable to Plaintiffs, the Defendants have not demonstrated that the joinder of Adams of fraudulent. Therefore, the Motion to Remand is due to be granted.

## V. CONCLUSION

Accordingly, it is hereby ORDERED as follows:

(1) Plaintiff's Motion to Remand (Doc. # 20) is GRANTED.

(2) This case is REMANDED to the Circuit Court of Macon County, Alabama.

(3) The Clerk of the Court is DIRECTED to take the necessary steps to effectuate the remand of this case to the Circuit Court of Macon County, Alabama and to close this file.

(4) Any pending motions are left for resolution by the Circuit Court of Macon County, Alabama.

Done this 27th day of March, 2008.

                                           /s/ Mark E. Fuller
                                     CHIEF UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).